Norman JETT, Plaintiff–Appellee,

v.

DALLAS INDEPENDENT SCHOOL DISTRICT, Defendant–Appellant.

No. 85–1015.

United States Court of Appeals, Fifth Circuit.

Feb. 5, 1988.

David W. Townend, Garland, Tex., for defendant-appellant.

Frank W. Hill, Shane Goetz, Michael Anthony Rossetti, Frank Gilstrap, Holl, Heard, Oneal, Gilstrap & Goetz, Arlington, Tex., for plaintiff-appellee.

## ON SUGGESTION FOR REHEARING EN BANC

(Opinion August 27, 1986, 798 F.2d 748)

Before GEE, CAROLYN DINEEN KING,* and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

Seeking rehearing, appellee Jett complains of our decision herein that *respondeat superior* is not a legally valid basis for imposition of liability on the school district under 42 U.S.C. § 1981, and asserts that this holding conflicts with our opinion in *Garner v. Giarrusso*, 571 F.2d 1330 (5th Cir.1978). Rejecting these contentions, we nevertheless deem appropriate some further explanation of our holding in this respect.

* Formerly Carolyn Dineen Randall.

1. *Garner* also expressed concern that it would be "anomalous" to hold private parties liable under section 1981, while exempting municipalities. *Id.*·at 1341. But, again, this was in the context of rejecting a *Monroe* approach, com-

*Garner* was decided during the reign of *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), which held that a municipality was not a "person" within the meaning of 42 U.S.C. § 1983 (section one of the Civil Rights Act of 1871) and hence could under no circumstances incur any potential section 1983 liability, and before the decision in *Monell v. Department of Social Services of the City of New York,*436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which reversed *Monroe* and held that a municipality was a "person" for purposes of section 1983 and hence could be liable thereunder, though not solely on a *respondeat superior* basis. That being the context, the question posed in *Garner* was not *respondeat superior*, but was rather whether municipalities were wholly exempted from section 1981 (section one of the Civil Rights Act of 1866) as they were from section 1983. For purposes of this question—whether municipalities were subject to the statute—*Garner* distinguished between sections 1981 and 1983 on the basis that the latter, but not the former, was expressly restricted to persons, and persons did not include municipalities. *Garner*, 571 F.2d at 1339–40. This ground for treating municipalities differently under section 1983 than under section 1981 of course evaporated with *Monell*'s holding that municipalities *were* persons under section 1983.[1]

*Garner* did not address whether municipal liability under section 1981 could be imposed on the basis of *respondeat superior*, and the opinion does not indicate that any contention in that respect was ever made. In *Garner*, a black police officer, following a bench trial, received a single lump-sum award of $5,000 damages under section 1981 for mental anguish and humiliation suffered as a result of undergoing a racially discriminatory transfer and reevaluation procedure while serving in the New Orleans police department. In affirming

pletely taking municipalities out of the coverage of the statute. A *Monell* approach, by contrast, adequately accommodates this concern, as is reflected by *Garner*'s recognition, discussed in the text, *infra*, that it was not holding municipalities to "vicarious liability." *Id.*

this award, we rejected the city's contention that *Monroe,* and the cases which followed it, wholly exempted municipalities from section 1981 coverage. *Garner* at 1339. In so holding, however, we explained that:

> "Our holding does not pose the problem of imposing *vicarious* liability upon a municipality because of the acts of its servants. *See Hamilton v. Chaffin,* 506 F.2d 904 (5th Cir.1975). Garner's employment contract was with the city, and the city itself was responsible for assuring an absence of employment discrimination. To the extent that it failed to live up to this responsibility, it is liable in damages." *Garner* at 1341 (emphasis added).

Our explanation was consistent with the facts which were before us. Earlier in our opinion, we had affirmed the district court's findings that the transfer and reevaluation were discriminatory. Involved in the transfer were both Garner's superior officer and the city police superintendent, and the latter decided that Garner would have to undergo the reevaluation and "took full responsibility for" that decision. The district court found that the superintendent's reevaluation "decision was discriminatory." *Id.* at 1334. The inclusion of the superintendent in the scheme implicated the city directly, and resulted in liability on a basis other than *respondeat superior.* The instant case, however, is in a different posture. Here, we have a specific finding that Jett's principal, Todd, was racially motivated in his recommendation of Jett's reassignment. But as to Superintendent Wright, who ordered Jett's reassignment and had the sole and unreviewable authority to reassign, there is no finding of racial motivation (or that Wright knew or believed that, or was consciously indifferent to whether, Todd's recommendation was racially motivated). In the case at bar, wholly unlike *Garner,* the *respondeat superior* question is raised by the parties and presented by the procedural and factual context of the case. *Garner* realized that *respondeat superior* liability might "pose" a "problem" for municipalities, but did not

have to resolve that issue or examine its ramifications.

We also observe that the only other municipal liability argument advanced by the city in *Garner,* apart from reliance on *Monroe,* was a plea for absolute or qualified immunity for municipalities, which we rejected. *Garner* at 1340–41. However, in light of the Supreme Court's reasoning in *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), rejection of municipal qualified immunity for purposes of section 1981 cannot easily co-exist with municipal *respondeat superior* liability thereunder. In *Owen,* the Court appears to have been significantly influenced by the policy consideration that the denial of qualified immunity to municipalities under section 1983 would not be unduly harsh on them because "when it is the local government itself that is responsible for the constitutional deprivation—it is perfectly reasonable to distribute the loss to the public as a cost of the administration of government, rather than to let the entire burden fall on the injured individual," *id.* at 1418 n. 39, and because "the public will be forced to bear only the costs of injury inflicted by the 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Id.* at 1419 (quoting *Monell* ).

Jett argues that the reasons which led *Monell* to reject *respondeat superior* liability for municipalities under section 1983 are absent under section 1981. We are not persuaded. In the first place, some of the same reasons are clearly applicable. Although *Monell* partially relied in this respect on the rejection of the Sherman amendment, the essential burden of *Monell* is that the Sherman amendment had little if anything to do with section one of the 1871 Act. Among other things, *Monell* points out that "the nature of the obligation created by that amendment was vastly different from that created by § 1," *id.* at 2022, that the amendment would have made municipalities liable for acts of a few private citizens, that it did not purport to amend section one, and that many supporters of

section one opposed the amendment. *Id.* 2023–32. *Monell* also relied on the conclusion that "creation of a federal law of *respondeat superior* would have raised all the constitutional problems associated with" the Sherman amendment. *Id.* at 2037. But whatever constitutional problems the imposition of *respondeat superior* liability on municipalities would have posed respecting the 1871 Act, it is plain that such problems would have likewise been perceived respecting the 1866 Act, as the latter had only the Thirteenth Amendment to rely on, while the 1871 Act additionally had the Fourteenth Amendment.

*Monell* further references "the absence of any language in § 1983 which can easily be construed to create *respondeat superior* liability." *Id.* at 2037 n. 57. This is, of course, likewise true as to section 1981. Indeed, section 1981 contains no language creating *any* liability; it is merely a declaration of rights, and does not even purport to define prohibited conduct, much less to either create a cause of action or impose or assign liability or responsibility to anyone. Again, *Monell* relies on the "shall subject, or cause to be subjected" language of section 1983. *Id.* at 2036. But whatever significance the presence of such language in section 1983 may have necessarily derives from the fact that section 1983 purports to assign responsibility to certain parties. As noted, section 1981 does not. Section two of the 1866 Act is the only section thereof which purports to impose any responsibility for deprivation of section one rights.[2] And, it is particularly relevant in this connection that the "shall subject, or cause to be subjected" language of the 1871 Act was *borrowed* from section two of the 1866 Act. *Id.* at 2032–33; *Monroe,* 81 S.Ct. at 483; *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 90 S.Ct. 1598, 1611, 26 L.Ed.2d 142 (1970). Given this context, the "shall subject, or cause to be subjected" language should not be a basis for differentiation

between sections 1981 and 1983 with respect to municipal *respondeat superior* liability.

■ Finally, account must be taken of the context in which *Monell* dealt,with the municipal liability *respondeat superior* issue. The initial and principal holding in *Monell* was that municipalities were covered by section 1983 and that a municipality was a "person" within the meaning of the statute's provision that "any person" who under color of state or local law violated another's federal constitutional rights "shall ... be liable to the party injured." This holding was partially based on the act passed in February 1871, a few months before the 1871 Civil Rights Act, providing that "in all acts hereafter passed ... the word 'person' may extend and be applied to bodies politic and corporate ... unless the context shows such words were intended to be used in a more limited sense." *Id.* at 2034–35. The Court also relied in this connection on the fact that "the debates [respecting section 1983] show that Members of Congress understood 'persons' to include municipal corporations," *id.* at 2033, and that "the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress *did* intend municipalities ... to be included among those persons to whom § 1983 applies." *Id.* at 2035 (emphasis in original). Thus, the *Monell* Court dealt with a statute which expressly and intentionally included municipalities among those subjected to liability thereunder, and contained no language expressly negating *respondeat superior.* In that context, some rather specific reasons were appropriate in order to negate municipal *respondeat superior* liability. But the section 1981 context is completely different in this respect. As noted, section one of the 1866 Act contains no language which can be construed as covering municipalities, and it

---

**2.** Section two has been described as the "enforcement section" of the 1866 Act. *McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 96 S.Ct. 2574, 2583, 49 L.Ed.2d 493 (1976). And the Court has indicated that sections one and two of the 1866 Act cover the same wrongs except for the "under color of law" restriction in

section two. *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 88 S.Ct. 2186, 2195–96, 20 L.Ed.2d 1189 (1968); *McDonald,* 96 S.Ct. at 2583.

We also observe that the last clause of section one of the 1871 Act expressly references the 1866 Act.

does not purport to create a cause of action or to assign or impose liability or responsibility on anyone. Moreover, we are aware of no specific legislative history of section one of the 1866 Act, comparable to that of the 1871 Act, indicating an intent to impose municipal liability.[3] See Judge Sneed's concurring opinion in *Sethy v. Alameda County Water District*, 545 F.2d 1157, 1163–64 & n. 1 (9th Cir.1976). Thus, the matter of who is liable for damages, and under what circumstances, for a deprivation of the rights declared in section one of the 1866 Act (section 1981) depends more on general considerations of likely legislative intent or on judge-made law than on specific, express legislative history or statutory language (except to the extent guidance is afforded by the "subject, or cause to be subjected" language of section two of the 1866 Act, *see* note 2, *supra*, and accompanying text). This appears to have been recognized in *Sullivan v. Little Hunting Park*, 396 U.S. 229, 90 S.Ct. 400, 405–06, 24 L.Ed.2d 386 (1969) (where the Court first authorized a damage action under section one of the 1866 Act; damages had been left open in *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 88 S.Ct. 2186, 2189–90 & nn. 13 & 14, 20 L.Ed.2d 1189 (1968)). *See also Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975); *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976).

■ We conclude that there is no reason to assume that Congress intended to impose vicarious municipal liability by section one of the 1866 Act though not so intending by section one of the 1871 Act, especially in light of then perceived constitutional problems associated with imposition of that character of municipal liability, and that the considerations enunciated in *Owen* counsel against such vicarious municipal liability, as does also the appropriateness of parallel treatment in this respect of these two post-Civil War statutes, particularly as contrasted to Title VII. See our original opinion, 798 F.2d at 762–63 & nn. 13 & 14.[4]

Accordingly, we reject Jett's complaints respecting our prior opinion's disposition of his section 1981 claim against the school district.[5]

Treating the suggestion for rehearing en banc as a petition for panel rehearing, it is ordered that the petition for panel rehearing is DENIED. No member of the panel nor Judge in regular active service of this Court having requested that the Court be polled on rehearing en banc (Federal Rules of Appellate Procedure and Local Rule 35),

---

3. Contrast *Owen, supra,* where the Court, in denying municipalities qualified immunity under section 1983, reviewed the status of municipal immunity at common law. 100 S.Ct. at 1412–15. *Owen* recognized that at common law municipalities had generally had immunity, *unless withdrawn by statute,* for "governmental" (as opposed to "proprietary") and "discretionary" functions. But the Court ruled that this history did not justify giving municipalities qualified immunity under section 1983, stating: "[T]he municipality's 'governmental' immunity is obviously abrogated by the sovereign's enactment of a statute making it amenable to suit. Section 1983 was just such a statute. By including municipalities within the class of 'persons' subject to liability for violations of the Federal Constitution and laws, Congress— the supreme sovereign on matters of federal law—abolished whatever vestige of the State's sovereign immunity the municipality possessed." *Id.* at 1413–14.
This reasoning, of course, is wholly inapplicable to section 1981, because nothing in section 1981 includes municipalities within any class.
With respect to the common law of municipal immunity for "governmental" as opposed to "proprietary" functions, it may be noted that many states recognize that school districts exercise *only* governmental, and no proprietary, functions for this purpose. *See* 33 A.L.R.3d 703 at 734; *Boyd v. Gulfport Municipal School District,* 821 F.2d 308 (5th Cir.1987). This has certainly been the rule in Texas. *See Braun v. Trustees of Victoria I.S.D.,* 114 S.W.2d 947, 950 (Tex.Civ.App.—San Antonio 1938, writ ref'd); *Garza v. Edinburg Consolidated I.S.D.,* 576 S.W. 2d 916, 918 (Tex.Civ.App.—Corpus Christi 1979, no writ).

4. As noted in our prior opinion, 798 F.2d at 763, our reasoning does not question private *respondeat superior* liability under section 1981. That issue was left open by the Supreme Court in *General Building Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed. 2d 835 (1982).

5. We are aware that *Springer v. Seamen,* 821 F.2d 871, 880–81 (1st Cir.1987), declined to follow our opinion in this respect. *Springer,* however, does not persuade us to a contrary result.

the suggestion for rehearing en banc is DENIED.

The mandate shall issue forthwith.