**Jane Thayer SMITH, Plaintiff, Appellant,**

v.

**BATH IRON WORKS CORPORATION, Defendant, Appellee.**

No. 91–1197.

United States Court of Appeals, First Circuit.

Heard July 31, 1991.

Decided Sept. 12, 1991.

Sarah Chapin Columbia, with whom Karen Quinn, Choate, Hall & Stewart, Alison C. Wetherfield, Martha F. Davis and Now Legal Defense and Education Fund, were on brief, for plaintiff, appellant.

Arlyn H. Weeks, Constance P. O'Neil and Conley, Haley, O'Neil & Kaplan, were on brief, for defendant, appellee.

Before TORRUELLA, Circuit Judge, and BOWNES and HILL,[*] Senior Circuit Judges.

TORRUELLA, Circuit Judge.

This appeal arises from an action by Jane Thayer Smith charging Bath Iron Works with constructive discharge under Title VII, 42 U.S.C. § 2000e *et seq.* Smith alleged that sexually explicit graffiti in the men's restroom of the Bath Iron Works shipyard created a work environment so hostile to her that it eventually forced her resignation. The case was tried before a magistrate judge. Bath Iron Works prevailed, and Smith now appeals. We affirm, although on different grounds than ruled upon in the first instance.[1]

## BACKGROUND

Smith was first employed by Bath Iron Works in 1979 as a part-time nurse in the first aid department. Very shortly thereafter she transferred full-time to the paint shop where she worked until May 1986.

In 1980, Smith reported her first incident of sexual harassment. Her foreman, Maurice Cloutier, allegedly grabbed her by the arm, pulled her into the lunchroom, and pushed her up against the lockers. Cloutier was admonished for his conduct by his superior.

In 1982, Smith reported a second incident of sexual harassment, this time involving a parking lot attendant named Carlton Brown. Brown allegedly kissed Smith and "touched her on the derriere"[2] against her wishes. Brown was counselled by a management employee to refrain from such contact. Neither Cloutier nor Brown had further offensive contact with Smith.

The magistrate found that neither the Cloutier nor the Brown episode was actionable because Bath Iron Works had responded appropriately under the circumstances. In addition, he found that the two incidents were separate and distinct and therefore not part of any on-going pattern of sexual harassment which would give rise to a hostile work environment.

These two isolated encounters, however, were not the only incidents of sexual harassment that took place during Smith's tenure at the shipyard. Sometime in 1982 sexually explicit graffiti directed against women in general, and against Smith in

---

[*] Of the Eleventh Circuit, sitting by designation.

[1] Smith's primary arguments on appeal are: (1) had the magistrate relied upon the correct cut-off date, he would have found sufficient evidence of discrimination within the 300–day period to support her constructive discharge claim, and (2) the magistrate reached an erroneous conclusion under its continuing violation analysis. For reasons that will become apparent herein, we find it unnecessary to consider the validity of either argument.

[2] In plain English, her buttocks. *Webster's Third New International Dictionary* 609 (1971).

particular, began to appear throughout the shipyard. The graffiti appeared predominantly in the men's restrooms, but Smith learned of its existence from male friends.[3] Smith continued to be the target of the graffiti for several years. During that time, Bath Iron Works never caught any employees in the act of writing graffiti and was therefore never able to discipline anyone for such acts. Bath Iron Works did, however, paint over the graffiti whenever it was reported.

Smith filed a claim with the Equal Employment Opportunity Commission ("EEOC") and the Maine Human Rights Commission in August 1985 alleging that she had been the victim of discrimination at Bath Iron Works. The magistrate incorrectly cited the reporting date as August 1986. Relying on the August 1986 date, the magistrate calculated the Title VII 300–day cut-off period to have begun in October 1985 rather than in October 1984. The only incident of harassment that was found to have taken place during the erroneous 300–day period occurred on November 13, 1985. Because that one isolated incident was not considered sufficient to uphold Smith's constructive discharge claim, she needed to show a continuing violation in order to reach back to previous incidents of harassment before the cut-off date.

In determining whether the conduct in question qualified as a continuing violation, the magistrate considered the following: (1) "[Did] the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation?" (2) "[Were] the alleged acts reoccurring ... or more in the nature of an isolated work assignment or employment decision?" (3) "[Did] the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?" *Berry v. Bd. of Supervisors of L.S.U.*, 715 F.2d 971, 981 (5th Cir.1983).

The magistrate determined that the first two elements were satisfied in this case. The third element, however, was not deemed satisfied. The magistrate concluded that because Smith had indicated that she was aware of her right to bring an action against Bath Iron Works as early as April 5, 1984, she was not the type of plaintiff who was unable to appreciate that she was being discriminated against until she filed her complaint in 1986. *Sabree v. United Bhd. of Carpenters and Joiners, Local No. 33*, 921 F.2d 396, 402 (1st Cir. 1990). *Sabree* clearly stated that it is plaintiffs (like Smith), who "knowingly fail[ ] to seek relief ... that Congress intended to bar by the [300] day limitation period." *Id.* (quoting *Roberts v. Gadsden Memorial Hospital*, 850 F.2d 1549, 1550 (11th Cir.1988)). "A knowing plaintiff has the obligation to file promptly or lose [her] claim." *Id.* Thus, the magistrate held that although Smith had otherwise met all the criteria for establishing a constructive discharge,[4] because she could not prove a continuing violation theory, her claim was adjudged time-barred.

## DISCUSSION

The magistrate's reliance on an incorrect cut-off date renders suspect his whole analysis as to whether the harassment that Smith endured was a "continuing violation." We nevertheless agree with his outcome. In affirming the ruling below, we rely on an independent and superior ground which we find clearly reflected in the record and which was argued on appeal.

---

**3.** In addition, Smith directly witnessed the following two instances of harassment. Derogatory remarks were scribbled on one of her campaign flyers when she was running for a seat in the State Senate, and a photograph depicting her as a pin-up girl was circulated among the shipyard workers. The magistrate found that Bath Iron Works could not be held responsible for either incident because the ships on which the flyer and photograph were found were under the control of the Navy.

**4.** The magistrate found that there was a hostile work environment at the shipyard, that the activity was within Bath Iron Works' control and that Bath Iron Works had not responded expeditiously in eradicating the graffiti.

*See Acha v. United States,* 910 F.2d 28, 30 (1st Cir.1990) ("court of appeals can affirm on any ground presented by the record") (citing *Helvering v. Gowran,* 302 U.S. 238, 58 S.Ct. 154, 82 L.Ed. 224 (1937)).

██ The magistrate failed to consider the timeliness of Smith's resignation, an important factor in the constructive discharge equation. Regardless of what 300-day time period applies, if Smith did not leave Bath Iron Works within a reasonable time after last being the subject of discrimination, she cannot prevail under a constructive discharge theory. *See, e.g., Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1317 (11th Cir.1989) (no constructive discharge found when the harassment ended on March 27, 1985, but defendants did not resign until April 8, 1985), *reh'g denied en banc,* 874 F.2d 821 (1988) and *reh'g denied en banc sub nom., McCullough v. Offshore Shipbuilding, Inc.,* 874 F.2d 821 (1988); *Jett v. Dallas Independent School District,* 798 F.2d 748 (5th Cir.1986) (no constructive discharge found when the discriminatory conduct took place in March 1983, but defendant did not resign until August 1983), *reh'g denied en banc,* 837 F.2d 1244 (1988), *modified on other grounds,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).

In this case, the magistrate found, and the record reflects, that graffiti directed against Smith last appeared in the shipyard on November 13, 1985. But Smith did not resign until May 1986, some six month later.[5] We find the time period too great to support Smith's constructive discharge claim. For that reason, we affirm the magistrate's ruling in favor of Bath Iron Works.

*Affirmed.*

---

**5.** There was some evidence adduced at trial, and echoed by the magistrate, that Smith's true motive for resigning may have been concern that working around lead paint would jeopardize her pregnancy.