**Reina SERRANO–NOVA, Plaintiff,**

v.

**BANCO POPULAR DE PUERTO RICO, INC., Defendant.**

**No. 00–1669 (DRD).**

United States District Court, D. Puerto Rico.

March 31, 2003.

---

Luis R. Mellado–Gonzalez, San Juan, PR, for Reina Serrano–Nova.

Pedro J. Manzano–Yates, Rebecca Paez–Rodriguez, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Banco Popular De Puerto Rico.

## OPINION & ORDER

DOMINGUEZ, District Judge.

Pending before the Court is Defendant's, Banco Popular de Puerto Rico, Inc., (hereinafter referred to as "Bank"or "Defendant"), Motion for Summary Judgment (Docket No. 17), opposed by Plaintiff Reina Serrano Nova (hereinafter referred to as "Plaintiff"or "Serrano") (Docket No. 26). Defendant replied through Docket No. 30, and Plaintiff thereafter sur-replied (Docket No. 34). For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED**.

## I. FACTUAL & PROCEDURAL BACKGROUND

The Court must analyze the factual scenario in this case construing the facts, the record, and all reasonable inferences in the light most favorable to the party opposing summary judgment. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000)("... the Court must draw all reasonable inferences in favor of the nonmoving party ..."); *see also, Leahy v. Raytheon Company*, 315 F.3d 11, 17 (2002) ("... the court must take the record 'in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor'.") (quoting *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990); see also, *Plumley v. Southern Container Inc.*, 303 F.3d 364, 368–69 (1st Cir.2002)).

Plaintiff Serrano Nova, a Afro–Puerto Rican woman, began working at Defendant Banco Popular de Puerto Rico, on September, 1979, until her resignation in May, 1998. Plaintiff became a full time clerk ("office clerk"), on 1979, when she commenced to work for Mr. Jesus Rodriguez Nales. In 1986, she was transferred to the Bank's Mortgage Center, where she commenced to work as "office clerk" or "assistant" to Mrs. Carmen Sandin, her supervisor, and supervisor of mortgage insurance services as well. In 1990, Mr. Francisco Segura became Mrs. Sandin's direct supervisor, as a result of the Bank's merger with former Banco de Ponce. Plaintiff reported to Mr. Segura, whenever Mrs. Sandin was not available or absent.

Plaintiff alleges that Mr. Segura criticized, admonished and "yelled"at her, in front of coworkers. Segura subjected Plaintiff to close scrutiny, and strictly monitored her work. At one point, Segura verbally admonished Plaintiff for signing in her time sheet, while being absent for work; he accused her of "stealing the Bank's time". Segura monitored Plaintiff's whereabouts more closely than other employees in the unit. Segura also utilized strong words when addressing Plaintiff and his treatment towards afro descendant employees was blatantly different from his treatment towards other employees.

On April 1, 1993, Mrs. Sandin retired. Serrano, and several other employees, applied for the position, but Mr. Jaime Bou, a white man, was instead selected to occupy the vacant position. Serrano complained of such decision to the Personnel Department, for she felt certain that she had the required experience, qualifications, and educational background to fulfill Mrs. Sandin's previous job. Plaintiff alleged Mr. Bou failed to fulfill the requirements. Not satisfied with Defendant's selection of Mr. Bou and because Mr. Segura's attitude and reprimands towards her had become unbearable, Plaintiff requested to be transferred to the Customer Service Department within the same Mortgage Division.

On mid-April 1993, she was transferred and began working at Customer Service under the supervision of Mr. Jose Francisco Colon. For the first three to four months at customer service, she had no problems, until Mr. Segura became Mr.

Colon's supervisor. (See Plaintiff's Sworn Statement, Exh. A, to Plaintiff's Opposition, Docket No. 26). At the customer service department, she was required to personally interview clients and fill out qualification and loan applications. Soon after Mr. Segura became Mr. Colon's supervisor, Plaintiff's chores changed. Around May/June 1994, she was instead ordered to answer phones and was transferred to a "dark"cubicle, where all she did was attend phone inquiries and complaints from clients; this customized service was commonly known as the "ACD" system. Mr. Segura still monitored her closely. Plaintiff thereafter began receiving negative performance evaluations, which allegedly presented obstacles in obtaining other job opportunities within the bank. Plaintiff received memos for her resistance to attend clients' calls and inquiries at the "dark" cubicle.

On October 1994, Plaintiff reported to the State Insurance Fund, as a result of mental depression symptoms. She returned to work on mid May 1995, though she was still assigned to the "ACD" system, in disregard of an accommodation ordered by the SIF's psychiatrist for a change in her working conditions. No accommodation was provided. During her tenure at the Customer Service Department, supervisors commented that they did not like Plaintiff and other female afro descendent coworkers because they were "negritas" ("blacks").[1] She was thereafter denied transfers and promotions[2] until finally transferred to the Automobile Insurance Division on May, 1997.[3] Her 1996 and 1997 evaluations were negative as well. At one point, at the Automobile Division she was accused of having responded inadequately through the phone, to a fellow employee from Ponce. That incident took place on November 5, 1997; on that date, she received a memo or written reprimand.

On July 31, 1997, Plaintiff addressed a letter to the Personnel Department, complaining of her 1996 performance evaluations[4], wherein she specifically expressed that notwithstanding all her efforts, "[a]pparently none of this is important when one is dark skinned and all efforts made are ignored, they are useless".[5] Plaintiff contends that at no time the Bank conducted an investigation regarding Plaintiff's complaints. At this last job, Plaintiff was regularly visited and questioned by Human Resources specialists, and was denied training opportunities for she found herself in a group of "misfits", commonly known and referred to as the "incapacitated". Plaintiff avers that there was an unwritten law, or practice, at the Bank to avoid and impede designation of black individuals in supervisory positions.[6]

Plaintiff, because of her mental depression symptoms, again sought treatment at

1. "Negritas" is not necessarily a pejorative word in Puerto Rico. However, for purposes of the instant summary judgment, we draw all inferences in Plaintiff's favor, *Reeves*, 530 U.S. at 150, 120 S.Ct. 2097, and consider it as a derogatory label.

2. Plaintiff's Sworn Statement, ¶ 23, p. 15; Exh. A, to Docket No. 26.

3. She reported and sought treatment at the SIF several times throughout 1996 and beginning of 1997.

4. Performance evaluation dated June 6, 1997; for the period of May, 1996 thru April, 1997. See also Plaintiff's Sworn Statement, ¶ 32, p. 20, Exh. A to Docket No. 26; see also Exh. 55 to Docket No. 26.

5. Plaintiff's Sworn Statement, ¶ 32, Exh. A, to Docket No. 26.

6. Mrs. Carmen Sandin, and Mr. Angel Rivera Colon. Exs. C & D, to Plaintiff's Opposition to Summary Judgment, Docket No. 26. See also Plaintiff's Sworn Statement, Exh. A, to Docket No. 26.

the SIF on December 24, 1997, and took a leave of absence. She never returned to work. Instead, on April 27, 1998, she submitted a resignation letter stating she was leaving the Bank, effective April 30th, due to the continuous discrimination and intolerable racial harassment she had been subjected to. Her resignation actually became effective May 14, 1998. Serrano filed charges of discrimination with the Anti Discrimination Unit of the Puerto Rico's Department of Labor and the Equal Employment Opportunity Commission on November 12, 1998, stating that the last discriminatory act on behalf of the Bank took place on May 14, 1998 (date her resignation became effective) [7]. The EEOC issued the corresponding "right-to-sue" letter on February 28, 2000.

On May 30, 2000, Plaintiff Serrano, filed the instant complaint against her former employer, Banco Popular, alleging violations to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and Puerto Rico's anti-discrimination statute, Law No. 100, 29 P.R. Laws Ann. § 146 *et seq.* Plaintiff also claims compensation for damages suffered pursuant to Article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141. Plaintiff's complaint specifically alleges three adverse employment actions on behalf of Defendant Bank, to wit, (i) that Defendant denied her training, promotions, and transfers because of her race and color; (ii) that Defendant subjected her to a hostile work environment racial harassment; (iii) and that harassment became so unbearable, that resulted in her constructive discharge. (Complaint, ¶ 1).

Defendant Bank moves for summary judgment on three grounds: (i) that Plaintiff did not adduce sufficient evidence to sustain her constructive discharge claim; (ii) that Plaintiff's Title VII claims for denial of training, failure to promote, etc., and hostile work environment racial harassment are time-barred, for Plaintiff did not file a timely complaint at the Equal Employment Opportunity Commission, and; (iii) that Plaintiff failed to support an adverse employment action, for she was not able to establish a prima facie case of discrimination. (Docket No. 17).

Plaintiff opposed summary judgment, alleging that the discriminatory acts of Defendant's supervisors and officials were continuous in nature and that Serrano did not realize until at least 2–3 months before she resigned that she had been subject and victim of racial harassment. (Plaintiff's Opposition, Docket No. 26). Plaintiff consequently avers that since the last alleged discriminatory act, i.e., constructive discharge, took place within the three hundred (300) days prior to filing the complaint at the EEOC, her Title VII claims are not time-barred. Plaintiff also contends that her working conditions supported to actionable harassment and constructive discharge. She further alleges that Defendant's failure to promote and train her was discriminatory in nature.

## II. SUMMARY JUDGMENT STANDARDS

The standard for summary judgment has been revisited by the First Circuit Court of Appeals on several occasions. *Serapion v. Martinez,* 119 F.3d 982, 986 (1st Cir.1997) (citing *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995), collecting cases). A court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R.CIV. P. 56(c).

---

**7.** See Exh. A, to Plaintiff's Complaint, (Docket No. 1).

To determine whether these criteria have been met, a court must pierce the boilerplate of the pleadings and carefully review the parties' submissions to ascertain whether they reveal a trialworthy issue as to any material fact. *Perez v. Volvo Car Corporation,* 247 F.3d 303, 310 (1st Cir.2001); *Grant's Dairy–Maine, LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res.,* 232 F.3d 8, 14 (1st Cir.2000); *Cortes–Irizarry v. Corporacion Insular,* 111 F.3d 184, 187 (1st Cir.1997). In applying this screen, the court must construe the record and all reasonable inferences from it in favor of the nonmovant (i.e., the party opposing the summary judgment motion). *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000); *Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 53 (1st Cir.2000). An absence of evidence on a critical issue weighs against the party— be it the movant or the nonmovant—who would bear the burden of proof on that issue at trial. *Perez, supra; see also: Torres Vargas v. Santiago Cummings,* 149 F.3d 29, 35–36 (1st Cir.1998); *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir. 1990).

A fact is deemed "material" if the same "potentially affect[s] the suit's determination." *Id.* "An issue concerning such a fact is 'genuine' if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Cortes–Irizarry,* 111 F.3d at 187.

Defendant, of course, must not only show that there is "no genuine issue of material facts," but also, that he is "entitled to judgment as a matter of law." *Vega–Rodriguez v. Puerto Rico Tel. Co.,* 110 F.3d 174, 178 (1st Cir.1997). Further, the court is required to examine the record "drawing all reasonable inferences helpful to the party resisting summary judgment,"

*Cortes–Irizarry,* 111 F.3d at 187. There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood...." *Greenburg v. Puerto Rico Maritime Shipping Auth.,* 835 F.2d 932, 936 (1st Cir.1987); *Reeves, supra.* "[E]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 95 (1st Cir.1996). The facts must be examined under the above criteria because on a potential appeal the appellate court examines "the undisputed facts in the light most congenial to the appellants and adopts their version of any contested facts which are material to our consideration of the issues." *Vega–Rodriguez,* 110 F.3d at 178.

The standard for summary judgment is straightforward and well-established A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see *Lipsett v. Univ. of P.R.,* 864 F.2d 881, 894 (1st Cir.1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," and "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden of establishing the nonexistence of a genuine issue as to a material fact is on the moving party. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986). This burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. See *Id.*

In other words, "[t]he party moving for summary judgment, bears the initial burden of demonstrating that there are no genuine issues of material fact for trial." *Hinchey v. NYNEX Corp.*, 144 F.3d 134, 140 (1st Cir.1998). This burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. After such a showing, the "burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997) (citing *Celotex*, 477 U.S. at 322–25, 106 S.Ct. 2548).

Although the ultimate burden of persuasion remains on the moving party and the court should draw all reasonable inferences in favor of the nonmoving party, the nonmoving party will not defeat a properly supported motion for summary judgment by merely underscoring the "existence of some alleged factual dispute between the parties"; the requirement is that there be a genuine issue of material fact. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505; *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993). In addition, "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Under Rule 56(e) of the Federal Rules of Civil Procedure, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); see also

*Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Summary judgment exists to "pierce the boilerplate of the pleadings," *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992), and "determine whether a trial actually is necessary." *Vega–Rodriguez v. P.R. Tel. Co.*, 110 F.3d at 178.

## III. ANALYSIS

Defendant Bank moves for summary judgment on the ground that Plaintiff's Title VII claims are time barred because Plaintiff did not assert nor allege that any incident of discrimination occurred within the three hundred days prior to filing her complaint at the EEOC on November 12, 1998. Defendant Bank further contends that any claims for alleged discriminatory act that occurred prior to January 17, 1998, are time barred.

Plaintiff, on the other hand, sustains that Defendant Bank's officers continuously discriminated against her for an eight-year period, which culminated in her resignation on May 14, 1998. Plaintiff avers that her resignation constitutes a constructive discharge, and that such constructive discharge is an act of discrimination per se pursuant to Title VII. As such, Plaintiff insists that the last act of discrimination on behalf of the Bank, i.e., constructive discharge, occurred within the applicable three hundred day statute of limitations period, and that her Title VII claims were timely filed at the EEOC. The Court considers May 14, 1998, as the resignation date, for Plaintiff herself stated, in her EEOC charge, that the last discriminatory act occurred on that specific date. (See Exh. A, Complaint, Docket No. 1)

### A. Title VII Claim

**Applicable Statute of Limitations**

Hostile work environment claims based on racial harassment are reviewed under the same standard as Title VII claims

based on sexual harassment. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq; *National Railroad Passenger Corp. v. Morgan, Jr.,* 536 U.S. 101, 122 S.Ct. 2061, 2073, n. 10, 153 L.Ed.2d 106 (2002).

Prior to filing a Title VII employment discrimination cause of action in court, Title VII requires aggrieved individuals to file an administrative charge with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred," or within three hundred days if the person is in a "deferral jurisdiction" such as Puerto Rico. 42 U.S.C. § 2000e–5(e)(1). *See also Landrau–Romero v. Banco Popular De Puerto Rico,* 2000 WL 343480 (1st Cir.2000); *Thomas v. Eastman Kodak Company,* 183 F.3d 38 (1st Cir.1999).

### Continuing Violation Theory

■ "The continuing violation doctrine creates an exception to Title VII's 300–day limitation period when the unlawful behavior complained of is deemed ongoing. A continuing violation allows a plaintiff not only to allege otherwise time-barred acts, but more concretely, to receive damages, such as back pay, based on and reaching back to those acts." *Provencher v. CVS Pharmacy, Division of Melville Corporation,* 145 F.3d 5, 14 (1st Cir.1998) (citations omitted). Within the First Circuit, two kinds of continuing violations are recognized: systemic or serial. *Id., see also, DeNovellis v. Shalala,* 124 F.3d at 307; *Sabree v. United Brotherhood of Carpenters and Joiners Local 33,* 921 F.2d 396 (1st Cir.1990).

■ A systemic violation occurs where there exists a discriminatory policy or practice that itself continues into the limitation period, regardless of whether there is an identifiable act of discrimination within the period. *Id.* Systemic violations refer to the general practices and policies of an employer, such as systems of hiring, promotion, training. *Provencher,* 145 F.3d at 14. "To establish a systemic violation, a plaintiff must allege that [he] she has been harmed by the application of a discriminatory practice or policy that continued or is continuing into the statutory time period." *Gonzalez Garcia,* 214 F.Supp.2d at 202; *Muniz–Cabrero v. Ruiz,* 23 F.3d 607, 610 (1st Cir.1994). This is not the case at bar.

■ Plaintiff Serrano alleges continuous serial violation. A serial violation is present where there exist a number of discriminatory acts emanating from the same discriminatory animus, with each act constituting a separate wrong actionable under Title VII, and there is at least one violation within the statute of limitations period that anchors the earlier claims. *Provencher,* 145 F.3d at 14. "Merely residual effects of past discriminatory conduct, however, are not themselves acts of discrimination and therefore will not satisfy the anchor violation requirement." *Id.,* at 14. *See also DeNovellis,* 124 F.3d at 309.

■ However, "[e]ven where the plaintiff alleges a violation within the appropriate statute of limitations period, the continuing violation claim will fail if the plaintiff was or should have been aware that [s]he was being unlawfully discriminated against while the earlier acts, now untimely, were taking place." *Provencher, supra; Sabree, supra.* "[A] knowing plaintiff has an obligation to file promptly or lose his claim: '[t]his can be distinguished from a plaintiff who is unable to appreciate that he is being discriminated against until he has lived through a series of acts and is thereby able to perceive the overall discriminatory pattern.'" *Provencher,* 145 F.3d at 15. *See also Thomas,* 183 F.3d at 53–54.

Plaintiff contends that she was continuously discriminated for a period of eight

years. Serrano invokes the continuing violation doctrine, and insists that she experienced a series of discriminatory incidents, which eventually forced her to resign from employment.

 The continuing violation doctrine creates an equitable exception to the statute of limitations when unlawful behavior is alleged to be ongoing. *Provencher,* 145 F.3d at 13. "[T]he continuing violation theory allows a plaintiff to prosecute claims that would otherwise be time-barred. However, '[t]he [continuing violation] doctrine is generally thought to be inapposite when an injury is definite, readily discoverable, and accessible in the sense that nothing impedes the injured party from seeking to redress it'." *Gonzalez Garcia v. PREPA,* 214 F.Supp.2d 194, 201–202 (D.Puerto Rico 2002), quoting, *Dziura v. United States,* 168 F.3d 581, 583 (1st Cir.1999).

 To establish a continuing violation, a plaintiff " 'must allege that a discriminatory act occurred or that a discriminatory policy existed' within the period prescribed by the statute." *Johnson v. Gen. Elec.,* 840 F.2d 132, 137 (1st Cir.1988)(*rev'd* on other grounds by *Clockedile v. New Hampshire Dept.of Corrections,* 245 F.3d 1, 6–7 (1st Cir.2001)) (quoting *Velazquez v. Chardon,* 736 F.2d 831, 833 (1st Cir.1984)). "[A] complaint must indicate that not only the injury, but the discrimination, is in fact on-going." *Goldman v. Sears, Roebuck & Co.,* 607 F.2d 1014, 1018 (1st Cir.1979); *Velazquez v. Chardon,* 576 F.Supp. 476, 477 (D.Puerto Rico 1983).

 A serial violation is "composed of a number of discriminatory acts emanating from the same discriminatory animus, each act constituting a separate [actionable] wrong." *Jensen v. Frank,* 912 F.2d 517, 522 (1st Cir.1990).

However, "[d]iscrete acts such as **termination, failure to promote, denial of transfer, or refusal to hire are easy to identify"**. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." *Morgan,* 122 S.Ct at 2073. (Emphasis added). A plaintiff can only file a charge to cover discrete acts that "occurred" within the appropriate time period.

On the other hand, hostile work environment claims are different in kind from discrete acts. *Morgan, supra.* "Their very nature involves repeated conduct." *Morgan,* 122 S.Ct at 2073. "The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* (Citations omitted). The Supreme Court in *Morgan* stated, "[a] hostile work environment is comprised of a series of separate acts that collectively constitute one 'unlawful employment practice'." *Id.,* at 2074; 42 U.S.C. § 2000e–5(e)(1). Therefore, "[t]he timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.*

 *Morgan,* however, "does not stand for the proposition that *any* timely allegation can properly anchor untimely allegation." *Paquin v. MBNA Marketing Systems, Inc.,* 233 F.Supp.2d 58, 63 (D.Maine 2002). "Rather, pursuant to Morgan, a plaintiff's untimely allegations may be considered for the purposes of determining

**262**

liability only if an act contributing to the hostile environment claim occurs within the filing period. *Morgan*, 122 S.Ct. at 2075 (stating that an employee cannot recover for untimely acts that have no relation to the timely acts); see also *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 395–96 (1st Cir.2002)." *Paquin*, 233 F.Supp.2d at 63.

Defendants argue Plaintiff can recover only for events that occurred within the 300 day period after January 17, 1998. Plaintiff contends that Supreme Court's recent decision in *Nat'l R.R. Passenger Corp. v. Morgan, supra,* allows her to reach back to events that occurred before January 17, 1998, because those acts comprise part of the overall hostile work environment and relate to events that occurred within the limitations period. However, in an effort to anchor her untimely allegations, Plaintiff alleges no acts that occurred within the timely filing period, except for her constructive discharge.

Here, Plaintiff filed her complaint at the EEOC on November 12, 1998. For her claim to be timely, Plaintiff must allege that a discriminatory act occurred in the three hundred period prior to the date she filed her complaint. Plaintiff maintains that during the three hundred day period before she filed suit she was constructively discharged.

The Court therefore evaluates whether Plaintiff has presented evidence which establishes a genuine issue of material fact as to the occurrence of such constructive discharge. *See Lopez–Carrasquillo v. Rubianes*, 230 F.3d 409, 413 (1st Cir.2000) (explaining that where a plaintiff has failed to establish predicate acts of discrimination, there is no need to consider whether such conduct was timely or constituted a continuing violation).

**Constructive discharge**

Plaintiff contends that she was constructively discharged on May 14, 1998.

Defendant argues that Plaintiff's resignation was untimely, that her last day at work was December 24, 1997, that Plaintiff never returned to work, and that only those allegations that took place before January 17, 1998, may fairly be argued to contribute to a claim for hostile work environment racial harassment. Since Plaintiff was absent from work during the whole three hundred day period prior to filing her complaint at the EEOC, the Court moves to evaluate whether she was subject to a constructive discharge, the only event alleged to have taken place within the above mentioned time period. The Court examines whether Plaintiff can thus anchor her untimely allegations, or those acts or events that fall outside the period, to the alleged discriminatory act of "constructive discharge".

Although resignation is ordinarily not a discriminatory act, when a resignation constitutes a constructive discharge, it is considered a discriminatory act. *Gonzalez Garcia*, 214 F.Supp.2d at 204; *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1110–11 (9th Cir.1998) (quoting *Young v. Nat'l Center for Health Servs. Research*, 828 F.2d 235, 238 (4th Cir. 1987)). To establish a constructive discharge, a plaintiff must show "working conditions so intolerable ... that a reasonable person would feel compelled to forsake his job rather than to submit to looming indignities." *Landrau–Romero v. Banco Popular De P.R.*, 212 F.3d at 613 (internal citations omitted). In an employment discrimination case alleging termination, the plaintiff first must establish a prima facie case, i.e., that he (1) was within a protected class; (2) met the employer's legitimate performance expectations; (3) was actually or **constructively discharged;** and (4) was replaced by another with similar skills and qualifications. See *St. Mary's Honor Ctr. v. Hicks*, 509 U.S.

502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Landrau–Romero,* 212 F.3d at 612–613. (Emphasis added).

■■■■ "Alleging constructive discharge presents a 'special wrinkle' that amounts to an additional prima facie element". *Sanchez v. Puerto Rico Oil Co.,* 37 F.3d 712, 719 (1st Cir.1994). In such cases, the plaintiff must prove that his employer imposed "'working conditions so intolerable [ ] that a reasonable person would feel compelled to forsake his job rather than to submit to looming indignities.'" *Landrau–Romero, supra; Simas v. First Citizens' Fed. Credit Union,* 170 F.3d 37, 46 (1st Cir.1999) (quoting *Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 480 (1st Cir.1993)). "The law does not permit an employee's subjective perceptions to govern a claim of constructive discharge." *Marrero v. Goya of Puerto Rico, Inc.,* 304 F.3d 7, 28 (1st Cir.2002). "[T]he fact that the plaintiff endured a hostile work environment-without more-will not always support a finding of constructive discharge." *Id,; Landgraf v. USI Film Prods.,* 968 F.2d 427, 430 (5th Cir.1992) ("To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment.").

■■■■ When alleging constructive discharge a plaintiff must "show that [his] her working conditions were 'so difficult or unpleasant that a reasonable person in [her] shoes would have felt compelled to resign'." *Marrero,* 304 F.3d at 28; quoting, *Alicea Rosado v. Garcia Santiago,* 562 F.2d 114, 119 (1st Cir.1977). "The standard is an objective one; it 'cannot be triggered solely by the employee's subjective beliefs, no matter how sincerely held'." *Id.; Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 54 (1st Cir.2000); *Calhoun v. Acme Cleveland Corp.,* 798 F.2d 559, 561 (1st Cir.1986). The applicable legal standard is objective, requiring an inquiry into the "reasonable state of mind" of the person experiencing the new conditions. *Greenberg v. Union Camp Corp.,* 48 F.3d 22, 27 (1st Cir.1995). Therefore, a claim for constructive discharge cannot hinge on an unreasonable reaction to one's work environment. *Id.; Vega v. Kodak Caribbean,* 3 F.3d at 481.

■■■ Moreover, "[t]he mere existence of a hostile work environment, however, is often not enough to support a finding of a constructive discharge." *Paquin,* 233 F.Supp.2d at 69; *Landgraf v. USI Film Prods.,* 968 F.2d at 430; *Keeler v. Putnam Fiduciary Trust Co.,* 238 F.3d 5, 10 (1st Cir.2001) (stating that the working conditions must be so unpleasant that staying on the job while seeking redress would have been intolerable). See also, *Kibbe v. Potter,* 196 F.Supp.2d 48, 68 (D.Mass.2002) ("[l]oss of prestige, humiliation, and embarrassment do not amount to a constructive discharge unless extreme."), quoting, *Mahoney v. Driscoll,* 727 F.Supp. 50, 51 (D.Mass.1989) and *Alicea,* 562 F.2d at 119. As for the evil that the doctrine of constructive discharge is intended to prevent, "[a]n employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers [but][h]e is not … guaranteed a working environment free of stress." *Munday v. Waste Mngt.of N.Am. Inc.,* 126 F.3d 239, 244 (4th Cir.1997) (quoting *Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir.1985)).

■■■ However, "[i]f a plaintiff does not resign within a **reasonable time period** after the alleged harassment, he was not constructively discharged." *Landrau–Romero,* 212 F.3d at 613 (Emphasis added); see also, *Gonzalez Garcia,* 214 F.Supp.2d at 204, quoting *Landrau–Romero,* and (citing *Smith v. Bath Iron Works*

*Corp.*, 943 F.2d 164, 167 (1st Cir.1991)). In *Smith*, the First Circuit found that no constructive discharge occurred where plaintiff quit six months after the last reported incident of sex discrimination; harassment ended on November, 1985, but plaintiff did not resign until May, 1986. "[I]n Landrau Romero, the First Circuit held that a seven-month gap between the alleged employment discrimination and plaintiff's resignation was too great a time period to find that plaintiff had been constructively discharged." *Gonzalez Garcia*, 214 F.Supp.2d at 204; *Landrau–Romero*, 212 F.3d at 613. In *Paquin*, 233 F.Supp.2d at 68–69, the Court found that Plaintiff was not constructively discharged, where she quit four months (May 2000) after the last alleged discriminatory act (Jan.2000), and after approximately three months after taking a leave of absence.

In the instant case, Plaintiff did not establish any act or racial harassment or discrimination, occurring after she left work, to report to the SIF and for a leave of absence, on December 24, 1997. The last act of discrimination, prior to her alleged constructive discharge, took place around mid 1997 (i.e., while employed at the Automobile Insurance Division), and then on November 5, 1997 (i.e., written reprimand). The Court agrees with Defendant Bank inasmuch as that any discrete or non-discrete action (other than her resignation) necessarily estopped on December 24, 1997, Plaintiff's last day of actual work at Defendant Bank. Plaintiff resigned effective on May 14, 1998, at least six months, after the last alleged discriminatory act and around five months after

she took the leave of absence from the Bank. The Court considers May 14, 1998, as the resignation date, for Plaintiff herself stated, in her EEOC charge, that the last discriminatory act occurred on that specific date. (See Exh. A, Complaint, Docket No. 1).

Plaintiff did not establish any discriminatory act occurring within a reasonable time of her resignation, and the Court fails to find any evidence to support a constructive discharge claim, since the alleged events did not occur any time close to Plaintiff's resignation. *Gonzalez Garcia, supra; Landrau–Romero, supra.* As the First Circuit stated in *Landrau–Romero*, 212 F.3d at 613, Serrano's "resignation came too late after the offensive conduct to be labeled a constructive discharge". See *Smith v. Bath Iron Works Corp.*, 943 F.2d at 167. See also, *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1317 (11th Cir.1989) (no constructive discharge found when the harassment ended on March 27, 1985, but defendants did not resign until April 8, 1985, less than a month after the discriminatory conduct ended) [8]; *Jett v. Dallas Independent School District*, 798 F.2d 748 (5th Cir.1986) (no constructive discharge found when the discriminatory conduct took place in March 1983, but defendant did not resign until August 1983, five months after the discriminatory conduct, and last alleged discriminatory act) [9], as quoted and adopted by the First Circuit in *Smith*, 943 F.2d at 167.[10]

Other Courts have stated that periods of time of around four to six months are remote, from date of last discriminatory

**8.** Reh'g denied en banc, 874 F.2d 821 (1988) and reh'g denied en banc sub nom, *McCullough v. Offshore Shipbuilding, Inc.*, 874 F.2d 821 (1989)

**9.** Reh'g denied en banc, 837 F.2d 1244 (1988), modified on other grounds, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).

**10.** See also, *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465–66 (9th Cir.1994) (sexual harassment had ended "some time" before employee quit), as quoted in *Coffey v. Chattanooga–Hamilton County Hosp. Auth.*, 194 F.3d 1311, 1999 WL 824870, *3 (6th Cir.1999).

act to date of resignation. See, *Hirschfeld v. New Mexico Corrections Dept.,* 916 F.2d 572 (10th Cir.1990) (no constructive discharge where last incident occurred four months before resignation). Other district courts have found that the passage of time can nullify a claim of constructive discharge. See, e.g., *Harman v. Austin,* 1992 U.S. Dist. LEXIS 4639 (W.D.Mo.1992) (Passage of time from confrontation in January of 1989 to retirement in May of 1989 "too remote ... to constitute a basis for claiming forced retirement", as quoted in, *Hubbard v. Parker,* 1992 WL 503431, *5 (E.D.Ark.1992)).

██ The specific events to which Plaintiff has affixed dates-i.e., the written reprimands, and the Bank's failure to accommodate his disability-occurred no later than November 5, 1997, at least six months [11] before her resignation. Plaintiff's "forced" resignation fails to make a prima facie discrimination case under the constructive discharge theory. As in *Landrau–Romero,* Serrano "has therefore failed to provide sufficient evidence of constructive discharge, and, accordingly, failed to make out a prima case of discriminatory termination". *Landrau–Romero,* 212 F.3d at 613; *Vega,* 3 F.3d at 480. "The timeliness of an employee's resignation is 'an important factor in the constructive discharge equation'." *Smith,* 943 F.2d at 167 (1st Cir.1991), followed in *Hogue v. MQS Inspection, Inc.,* 875 F.Supp. 714, 723 (D.Colo.1995), quoting, *Woodward v. City of Worland,* 977 F.2d 1392, 1401 (10th Cir.1992). See also, *Hirschfeld v. New Mexico Corr. Dep't,* 916 F.2d 572, 580 (10th Cir.1990) (affirming district court's rejection of constructive discharge claim where plaintiff did not leave work until four months after allegedly discriminatory acts), as quoted in *Nowlin v. K Mart*

*Corporation,* 50 F.Supp.2d 1064, 1072 (D.Kan.1999).

Therefore, since Plaintiff cannot establish that any act of harassment occurred within a reasonable time of her resignation, and since the Court finds that the passage of unreasonable time in the instant case nullifies any constructive discharge claim, "[t]he timeliness [or remoteness] of an employee's resignation is 'an important factor in the constructive discharge equation'." *Smith,* 943 F.2d at 167, Plaintiff failed to establish a timely claim of harassment at the EEOC. Hence, her Title VII claims are time-barred, and thus dismissed.

## B. The State Law claims; Law 100 and Article 1802

Plaintiff also claims Defendant violated Puerto Rico's anti-discrimination statute, Law 100, *supra,* and claims damages under Article 1802 of the Puerto Rico Civil Code, *supra,* as result of Defendant's alleged discriminatory employment actions.

As to the Plaintiffs' state claims, discrimination is also unlawful in the Commonwealth of Puerto Rico. Article II, Section 1 of the Constitution of the Commonwealth of Puerto Rico, Law No. 100 of June 30, 1959 (29 P.R.Laws Ann. § 146, *et seq.*), Act No. 44 of June 2, 1985 (1 P.R.Laws Ann. § 507(a)), Articles 1802 and 1803 of the Puerto Rico Civil Code (31 P.R.Laws Ann. §§ 5141–42) and Article 1044 of the Puerto Rico Civil Code (31 P.R.Laws Ann. § 2994), all provide causes of action under the proper circumstances (to wit, *respondeat superior* liability). All have statute of limitations of one year as well.

---

11. Or 5 months, 22 days, if the Court considers that her resignation was dated April 27, 1998; however, the Court stresses that Plaintiff, at the EEOC charge, used letter under oath the date of May 14, 1998.

However, the Court will dismiss these State claims without prejudice as they involve the issue of potential continuing violations, such issue to be reserved for the Supreme Court of Puerto Rico to either adopt or reject a rule similar to *Provencher, supra,* and/or *Morgan, supra.* The District Court should not be trail blazing in difficult unresolved issues of Puerto Rico law, hence the local claims are discharged without prejudice. *Rodriguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1177 (1st Cir.1995); *See also: Moor v. County of Alameda,* 411 U.S. 693, 716, 93 S.Ct. 1785, 1799, 36 L.Ed.2d 596 (1973).

 Because this is not a diversity case, the power of the federal court to hear and to determine state law claims depends on the presence of at least one "substantial" federal claim in the lawsuit. *Newman v. Burgin,* 930 F.2d 955, 963 (1st Cir.1991) citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). **Federal jurisdiction in this case hinges on the Title VII claims.** Since "pendent" or "supplementary" claims consist of state matters over which Congress did not grant federal courts independent jurisdiction, once the federal question issues are dismissed, the Court may dismiss the entire case. See *Newman v. Burgin,* 930 F.2d at 964. See also, *Cotto v. Citibank, N.A.,* 247 F.Supp.2d 44, 2003 WL 681806 (D.Puerto Rico 2003) (February 12, 2003). See *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (emphasizing that exercise of pendent jurisdiction is at the district court's discretion); *Rodriguez v. Doral Mortg. Corp.,* 57 F.3d at 1177 ("[a]s a general principle, the unfavorable disposition of a plaintiff's federal claims at the **early stages of a suit,** well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims"); *Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130 ("if the federal claims are dismissed before trial, ... the state claims should be dismissed as well."); see also, *Moor v. County of Alameda,* 411 U.S. at 716, 93 S.Ct. at 1799.

Wherefore, after a thorough review of the record, it is clear to the Court that there are no genuine issue of material facts, and as the Title VII claims here are time-barred, the Defendant is entitled to judgment as a matter of law as to the federal action. Defendant's Motion for Summary Judgment (Docket No. 17), is hereby **GRANTED,** and this case is **DISMISSED WITH PREJUDICE.** The Court hereby also **DISMISSES WITHOUT PREJUDICE** the Plaintiff's claims against Defendant Bank arising under Puerto Rico law, i.e, Law 100 and Article 1802 damages. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**