Jovita MENENDEZ, et al.  Plaintiffs

v.

**SCOTIABANK OF PUERTO RICO, INC., et al.  Defendants**

**No.  Civ.  02–2481(RLA).**

United States District Court,
D.  Puerto Rico.

May 27, 2004.

Enrique A. Baez, Calvesbert Law Offices, PSC, Miguel A. Cuadros–Pesquera, Cuadros & Cuadros, San Juan, PR, for Plaintiffs.

Luis F. Antonetti–Zequeira, Hector J. Perez–Rivera, Jorge Rodriguez–Micheo, Javier G. Vazquez–Segarra, Goldman Antonetti & Cordova, San Juan, PR, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ACOSTA, District Judge.

Pending before the Court are Defendants SCOTIABANK OF PUERTO RICO, INC. and THE BANK OF NOVA SCOTIA (both entities hereinafter referred to as "SCOTIABANK" or "Defendant") Motion for Summary Judgment (Docket No. 16), plaintiff's opposition (Docket No. 27), and defendants' reply (Docket No. 31). Plaintiff's sur-reply was denied by this Court for having been untimely filed (Docket No. 36). For the reasons set forth below, defendant's Motion for Summary Judgment is **GRANTED**.

### I. PROCEDURAL AND FACTUAL BACKGROUND

JOVITA MENENDEZ (MENENDEZ) began working at SCOTIABANK of Puerto Rico in October of 1963. During her employment MENENDEZ worked in different branches including the branches of The Bank of Nova Scotia.

In 1985 MENENDEZ began working as a Credit Assistant with credit analysis responsibilities at the Bank of Nova Scotia located in the Plaza Scotiabank Hato Rey Branch, having previously worked with the operational aspects of the bank. In 1990, MENENDEZ, who had been reclassified as an Account Officer since December 1989, began working in the Retail Banking Credit Area of SCOTIABANK of Puerto Rico. MENENDEZ' job classification during this period was that of an M–2.

In 1992 a new job classification system was implemented. MENENDEZ' job title of Account Officer was then reclassified as

an A–24, but her salary was administered at an A–28 level.

In 1994 MENENDEZ was changed from the Retail Banking Credit Area to the Commercial Banking Unit within the bank. During 1996, once again, a new job classification system was implemented. MENENDEZ' classification of Account Officer changed to an A–73. Again MENENDEZ' salary was increased to the salary of the mentioned classification.

During 1998 a restructuring of the Hato Rey Commercial Banking Center called for a change in MENENDEZ' job title from Account Officer to Account Manager. Her classification remained as A–73.

During her tenure at the Commercial Banking Center, MENENDEZ was evaluated by various supervisors, among them, Pedro Pérez, Claudio Domínguez, Mary Rosales, Peter Evelyn and Ramón Santiago. Her evaluations were average or above average during this period. MENENDEZ' evaluations consistently identified her ability to work with personal loans and small commercial loans, but her knowledge and understanding of financial statement analysis in the preparation of complex credit packages and larger loans needed improvement.

In 2000, MENENDEZ was transferred from the Commercial Banking Center to the Business Banking Center. Her responsibilities involved the development of small business portfolios and independent business accounts. Her supervisor in that area of the bank was Héctor Fernández. He evaluated her work in the Business Banking Center as "exceeds expectations".

In 1998, SCOTIABANK revised its Job Posting Policy and notified it to all its employees. This policy permitted employees of the bank to request a specific job position whenever a vacancy became available. Although MENENDEZ had expressed her interest in being reclassified at a higher level, she never participated in the job posting policy until 2001.

During June 2001, MENENDEZ requested participation in the job posting process for the opportunity to fill a Senior Account Manager position classified as an A–81. Two (2) employees applied for this vacancy, MENENDEZ and Francisco Vázquez. Francisco Vázquez was the SCOTIABANK Santurce Branch Manager classified as an A–80. Vázquez was chosen to occupy the position on June 22, 2001. MENENDEZ was informed on that very same date of the decision.

MENENDEZ expressed her disappointment in not being selected for the job vacancy. When she met with her supervisors to discuss their decision to select Francisco Vázquez, MENENDEZ was not satisfied with the explanation and claimed that the bank had discriminated against her because of her age and gender. She so indicated in a letter dated June 22, 2001, that she sent to Ivan Méndez, President and CEO of SCOTIABANK of Puerto Rico, Inc.

MENENDEZ continued working until October 24, 2001, when she left SCOTIABANK on sick leave. MENENDEZ later applied for short-term and long-term disability benefits and did not return to work. SCOTIABANK reserved her employment until January 13, 2003, having thus kept MENENDEZ' job open for a longer period than the one (1) year required by local law. According to defendants, her position at SCOTIABANK remains vacant.

On or about July 12, 2002, MENENDEZ filed an age and gender discrimination charge with the Equal Employment Opportunity Commission (EEOC) and was issued the corresponding "right-to-sue" letter on that same date.

On October 1, 2002, MENENDEZ filed this complaint against SCOTIABANK alleging violations to Title VII of the Civil rights Act of 1964, *42 U.S.C. § 2000e et seq.*, the Age Discrimination in Employment Act (ADEA), *29 U.S.C. § 621 et seq.*, and Puerto Rico's anti-discrimination statute, Law No. 100, *29 L.P.R.A. § 146 et seq.* Plaintiff's complaint specifically alleges that defendant denied her a series of promotions because of her gender and age. Plaintiff furthermore alleges that she was not given adequate office furniture and equipment.

Defendant moved for summary judgment on the grounds that plaintiff's Title VII, ADEA and Law No. 100 claims for failure to promote are time-barred, since plaintiff did not file a timely complaint at the EEOC.

Plaintiff opposed summary judgment by claiming that discrete discriminatory acts took place within the three hundred (300) days prior to filing her charge with the EEOC and that defendant's failure to promote constituted a continuous violation.

## II. *SUMMARY JUDGMENT STANDARD*

The standard for summary judgment has been revisited by the First Circuit Court of Appeals on several occasions. *Serapión v. Martínez*, 119 F.3d 982, 986 (1st Cir.1997) (citing *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995)) (collecting cases). A court may grant summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also: Serrano–Nova v. Banco Popular de Puerto Rico, Inc.*, 254 F.Supp.2d 251 (D.Puerto Rico 2003).

To determine whether these criteria have been met, a court must pierce the boilerplate of the pleadings and carefully review the parties' submissions to ascertain whether they reveal a trialworthy issue as to any material fact. *Pérez v. Volvo Car Corporation*, 247 F.3d 303, 310 (1st Cir.2001); *Grant's Dairy–Maine, LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res.*, 232 F.3d 8, 14 (1st Cir.2000); *Cortes–Irizarry v. Corporación Insular*, 111 F.3d 184, 187 (1st Cir.1997). In applying this screen, the court must construe the record and all reasonable inferences from it in favor of the nonmovant (i.e., the party opposing the summary judgment motion). *Suárez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir.2000). An absence of evidence on a critical issue weighs against the party—be it the movant or the nonmovant—who would bear the burden of proof on that issue at trial. *Pérez*, 247 F.3d 303; *see also: Torres Vargas v. Santiago Cummings*, 149 F.3d 29, 35–36 (1st Cir.1998); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990); *Serrano–Nova*, 254 F.Supp.2d at 258.

A fact is deemed "material" if it potentially affects the suit's determination. *Id.* An issue concerning such a fact is "genuine" if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor. *Cortés–Irizarry*, 111 F.3d at 187, *Serrano–Nova, Id.*

Defendant, of course, must not only show that there is no genuine issue of material facts, but also, that he is entitled to judgment as a matter of law. *Vega–Rodríguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997). Further, the court is required to examine the record drawing all reasonable inferences helpful to the party resisting summary judgment, *Cortés–Irizarry*, 111 F.3d at 187. There is

no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, and no room for the judge to superimpose his own ideas of probability and likelihood. *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987).

■ However, even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation. *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir. 1996). The facts must be examined under the above criteria because on a potential appeal the appellate court examines the undisputed facts in the light most congenial to the appellants and adopts their version of any contested facts which are material to our consideration of the issues. *Vega–Rodríguez*, 110 F.3d at 178.

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also: Lipsett v. Univ. of P.R.*, 864 F.2d 881, 894 (1st Cir.1988). A factual dispute is "material" if it might affect the outcome of the suit under the governing law, and "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden of establishing the nonexistence of a genuine issue as to a material fact is on the moving party. *See, Celotex Corp. v. Ca-*

*trett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. *Id.*; *Serrano–Nova*, 254 F.Supp.2d at 259.

In other words, the party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact for trial. *Hinchey v. NYNEX Corp.*, 144 F.3d 134, 140 (1st Cir.1998). This burden may be discharged by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. After such a showing, the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor. *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997) (citing *Celotex*, 477 U.S. at 322–25, 106 S.Ct. 2548); *Serrano–Nova, Id.*

■ Although the ultimate burden of persuasion remains on the moving party and the court should draw all reasonable inferences in favor of the nonmoving party, the nonmoving party will not defeat a properly supported motion for summary judgment by merely underscoring the existence of some alleged factual dispute between the parties; the requirement is that there be a genuine issue of material fact. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505; *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993). In addition, factual disputes that are irrelevant or unnecessary will not be counted. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Under Rule 56(e) of the Fed.R.Civ.P., the non-moving party may not rest upon the mere allegations or denials of the adverse party's pleadings, but must set forth spe-

cific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see also: Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Summary judgment exists to pierce the boilerplate of the pleadings, and determine whether a trial actually is necessary. *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992), 110 F.3d at 178; *Serrano–Nova, Id.*

## III. *ANALYSES AND CONCLUSIONS*

Defendant Scotiabank moves for summary judgment on the grounds that plaintiff's Title VII, ADEA and Law No. 100 claims are time-barred because the action on which plaintiff bases her allegation of failure to promote took place more than one (1) year before she filed her charge with the EEOC. Defendant SCOTIA-BANK further pleads that plaintiff did not properly assert that any incident of discrimination occurred within the statute of limitations period.

Plaintiff, on the other hand, sustains that other incidents occurred within the statue of limitations period and that defendant's failure to promote constituted a continuous violation.

For purposes of summary judgment, the following dates are uncontested:

— June 22, 2001: MENENDEZ was informed that Francisco Vázquez had been chosen for the position she had formally requested.

— July 12, 2001: one (1) year prior to the filing of MENENDEZ' EEOC charge.

— September 16, 2001: three hundred (300) days prior to the filing of MENENDEZ' EEOC charge.

— October 24, 2001: MENENDEZ' last actual day of work.

— July 12, 2002: MENENDEZ filed her EEOC charge.

## A. *TITLE VII AND ADEA CLAIMS*

### 1. *Applicable Statute of Limitations*

██ A plaintiff raising claims of discrete discriminatory or retaliatory acts, such as termination, failure to promote, denial of transfer or refusal to hire, under Title VII or the ADEA must file a charge within the appropriate one hundred eighty (180) or three hundred (300) day period with the EEOC or lose the ability to recover. 42 U.S.C. § 2000e–5(e)(1); 29 U.S.C. § 626(d); *National Railroad Passenger Co. v. Morgan,* 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). The failure to be promoted is the crux of MENEN-DEZ' contention of age and sex bias in this case.

██ A statutory prerequisite to a civil action alleging age and sex discrimination in employment is the filing of a timely complaint with the EEOC. *Mercado–García v. Ponce Federal Bank,* 979 F.2d 890 (1992). Title VII 42 U.S.C. § 2000e–5(e)(1) is a charge filing provision that specifies with precision "the prerequisites that a plaintiff must satisfy before filing suit." *National Railroad,* at 108, 122 S.Ct. 2061 (quoting *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)). ADEA 29 U.S.C. § 626(d) contains the same provision for claims arising under that statute.

"An individual must file a charge within the statutory time period and serve notice upon the person against whom the charge is made. In a state that has an entity with the authority to grant or seek relief with respect to the alleged discriminatory practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other states, the charge must be filed within 180 days. A claim is time barred if it is not filed within these limits." *Id.*

In *National Railroad,* the Supreme Court stated that:

> Discrete acts such as termination, *failure to promote,* denial of transfer, or refusal to hire *are easy to identify.* Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice". Morgan can only file a charge to cover discrete acts that "occurred" within the appropriate time period. [emphasis added].

■ What determines the triggering date of the charge-filing period is the moment in which the plaintiff knows—or reasonably should have known—that an unlawful action has occurred or that an unlawful decision has been made. *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). In this case, MENENDEZ became aware that she was not promoted on or about June 22, 2001. However, she did not file her EEOC charge until July 12, 2002, that is, three hundred eighty-five (385) days after she became aware of the alleged unlawful decision.

■ In any event, and according to the Supreme Court in *National Railroad,* the only events actionable are those that occurred three hundred (300) days prior to the date MENENDEZ filed her charge with the EEOC. This means that all alleged discrete discriminatory acts, such as failure to promote, that occurred prior to September 16, 2001 are time barred.

It is uncontested that MENENDEZ' last day of actual work was on October 24, 2001. MENENDEZ would have had to assert that she suffered some discriminatory act between September 16, 2001 and October 24, 2001. However this Court fails to find any material evidence in the record that points towards a discriminatory act occurring after the alleged failure to promote which took place on June 22,

2001. Therefore, plaintiff's claims are no longer actionable.

■ Plaintiff MENENDEZ also contends that every time she received a check after September 16, 2001, this event constituted in and of itself a discrete act actionable under Title VII and the ADEA based on pattern-or-practice discrimination. Mere residual effects of any alleged past discriminatory conduct are not themselves actionable and therefore will not satisfy as a discrete discriminatory act under Title VII or the ADEA. *Serrano-Nova,* 254 F.Supp.2d at 263. Any increase or lack thereof in salary stemming from defendant's decision to not promote Plaintiff are not actionable. MENENDEZ' actionable claim was her "failure to promote" claim, a discrete discriminatory act which according to *National Railroad* had to be filed with the EEOC within the statutory three hundred (300) day time period.

In *Kaster v. Safeco Insurance Co.,* 212 F.Supp.2d 1264 (D.Kan.2002), the Court stated the following in a footnote related to a pattern-or-practice discrimination claim vis-a-vis the "failure to promote" in light of *National Railroad:*

> Plaintiff's bald assertions that defendant engaged in a pattern and practice of discrimination against him individually is a wholly distinct theory from "pattern-or-practice" cases brought by a class of persons alleging general discriminatory treatment toward all members of that protected class. A "pattern-or-practice" case, unlike plaintiff's individual disparate treatment claim here, requires proof of more "than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts". Rather, plaintiffs alleging a "pattern-or-practice" of discrimination must "establish by a preponderance of the evidence that ... discrimination was the company's standard

operating procedure—the regular rather than the unusual practice". (Internal citations omitted). *Id.,* at 1269, n. 4 (internal citations omitted).

MENENDEZ' claim of alleged pattern and practice discrimination stems solely from the fact that she was not promoted— not the paychecks she received after that. Thus, MENENDEZ' pattern-or-practice claim is not viable.

### 2. *Continuing Violation Theory*

■■■ The continuing violation doctrine creates an exception to Title VII's three hundred (300) day limitation period when the unlawful behavior complained of is deemed ongoing. A continuing violation allows a plaintiff not only to allege otherwise time-barred acts, but more concretely, to receive damages, such as back pay, based on and reaching back to those acts. *Provencher v. CVS Pharmacy, Division of Melville Corporation,* 145 F.3d 5, 14 (1st Cir.1998) (citations omitted). Within the First Circuit, two (2) kinds of continuing violations are recognized: systemic or serial. *Id.; see also, DeNovellis,* 124 F.3d at 307; *Sabree v. United Brotherhood of Carpenters and Joiners Local 33,* 921 F.2d 396 (1st Cir.1990); *Serrano–Nova,* 254 F.Supp.2d at 260.

■■■ A systemic violation occurs where there exists a discriminatory policy or practice that itself continues into the limitation period, regardless of whether there is an identifiable act of discrimination within the period. *Id.* Systemic violations refer to the general practices and policies of an employer, such as systems of hiring, promotion, training. *Provencher,* 145 F.3d at 14. To establish a systemic violation, a plaintiff must convincingly allege that she has been harmed by the application of a discriminatory practice or policy that continued or is continuing into

the statutory time period. *González García v. P.R. Elec. Power Auth.,* 214 F.Supp.2d 194 at 202; *Muñiz–Cabrero v. Ruiz,* 23 F.3d 607, 610 (1st Cir.1994). The record shows that MENENDEZ has not presented any evidence as to the discriminatory application of a practice or policy, even when she alleges that the job posting program was discriminatory in its application. MENENDEZ only participated once in the job posting program and this participation falls outside the statutory time period for her to be able to elaborate such a claim. MENENDEZ also fails to present any evidence to show that the program continued to be applied in a discriminatory manner after she was not promoted and continuing into the statutory time period.

■■■ A serial violation is present where there exist a number of discriminatory acts emanating from the same discriminatory animus, with each act constituting a separate wrong actionable under Title VII, and there is at least one (1) violation within the statute of limitations period that anchors the earlier claims. *Provencher,* 145 F.3d at 14. Merely residual effects of past discriminatory conduct, however, are not themselves acts of discrimination and therefore will not satisfy the anchor violation requirement. *Id.; see also, DeNovellis,* 124 F.3d at 309. Here MENENDEZ has been unable to show that a violation occurred within the statute of limitations period.

■■■ Even when the plaintiff alleges a violation within the appropriate statute of limitations period, the continuing violation claim will fail if the plaintiff was or should have been aware that she was being unlawfully discriminated against while the earlier acts, now untimely, were taking place. *Provencher,* 145 F.3d at 14. A knowing plaintiff has an obligation to file promptly or lose his claim. This can be

distinguished from a plaintiff who is unable to appreciate that he is being discriminated against until he has lived through a series of acts and is thereby able to perceive the overall discriminatory pattern. *Provencher*, 145 F.3d at 15. *See also, Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 53–54; *Serrano–Nova*, 254 F.Supp.2d at 260. MENENDEZ claimed in writing, the same day she was informed she had not been promoted, that defendant had discriminated against her because of her age and sex. MENENDEZ then failed to exercise her right until more than one (1) year later. Because of this, MENENDEZ' allegation of continuing violation is unsuitable in this action.

■■■ The continuing violation doctrine creates an equitable exception to the statute of limitations when unlawful behavior is alleged to be ongoing. *Provencher*, 145 F.3d at 13. The continuing violation theory allows a plaintiff to prosecute claims that would otherwise be time-barred. However, the continuing violation doctrine is generally thought to be inapposite when an injury is definite, readily discoverable, and accessible in the sense that nothing impedes the injured party from seeking to redress it. *González García v. PREPA*, 214 F.Supp.2d 194, 201–202 (D.Puerto Rico 2002), (quoting, *Dziura v. United States*, 168 F.3d 581, 583 (1st Cir.1999)). MENENDEZ' alleged injury became definite, readily discoverable, and accessible for her to redress it. Simply stated, on June 22, 2001, she was informed that she had not been promoted but did not file her EEOC charge until July 12, 2002.

■■■ "Hostile work environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." *National Railroad* at 115, 122 S.Ct. 2061. The unlawful employment practice therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. *Id.* The Supreme Court in *National Railroad* stated that a hostile work environment is comprised of a series of separate acts that collectively constitute one (1) unlawful employment practice. *Id.*, at 117, 122 S.Ct. 2061; 42 U.S.C. § 2000e–5(e)(1). Therefore, the timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability. *Id.* Because plaintiff does not allege hostile work environment, this discussion need not go further.

Plaintiff claims that she was not given adequate office and furniture equipment. Plaintiff specifically alleges that her office and computer equipment were inadequate; she was denied an ergonomic chair; her working area had poor illumination; and that her office was cold. Plaintiff has not been able to assert that any of these events occurred within the statute of limitations period. To the contrary, the record shows that these events occurred during the years 1999 and 2000. Furthermore, plaintiff has not been able to connect these incidents to the alleged age and sex discrimination suffered by her for not being promoted except for her unsupported speculation.

■■■ Simply because a discrete discriminatory act is like or related to other discriminatory acts that may even be part of a discriminatory practice does not mean that it is of such a continuing nature that

the exception should apply. Therefore, discrete discriminatory acts are not actionable if time-barred, even when they are hypothetically related to acts alleged in timely filed charges, of which there are none in this case.

MENENDEZ has not successfully argued pattern and practice discrimination or continuing violation because even long before *National Railroad,* federal courts have consistently held that the continuing violation doctrine does not make timely a filing based merely on the effects of an allegedly discriminatory denial or failure to promote. For example, in *Jones v. Somerville,* 735 F.2d 5 (1st Cir.1984) the plaintiff originally protested as discriminatory the city's refusal to appoint him lieutenant. He was afterward appointed lieutenant, but as a result of the delay he was ineligible to take the captain's civil service examination because he had not been a lieutenant for the required one (1) year minimum period. He sued alleging continuing violation. The First Circuit-Court disagreed, saying that there had been no new violation, but merely the ongoing effect of the old violation.

In *Jewett v. ITT Corp.,* 653 F.2d 89 (3rd Cir.1981), although the plaintiff had been denied a promotion more than 180 days before she filed charges with the EEOC, she claimed a continuing violation based on a continuing personality disorder, which allegedly resulted from the employer's discriminatory promotion policy. The court held that there was no continuing violation; at most plaintiff's personality disorder was the effect of a past violation.

An evaluation of a continuous violation argument must distinguish between a continuing violation and the continuing effects of a prior, yet discrete and no longer actionable or existent discriminatory act. *Cajigas v. Banco de Ponce,* 741 F.2d 464, 469 (1st Cir.1984). MENENDEZ knew of the alleged discriminatory act of not promoting her in June 22, 2001, but failed to exercise her right until July 12, 2002. Furthermore, MENENDEZ has presented no genuine issue of material fact, since it is uncontested that the June 22, 2001, failure to promote event was the last alleged discriminatory event suffered by her. Every alleged incident after that date is a continuing effect of the failure to promote, which does not toll the statute of limitations.

It is also uncontested that MENENDEZ' knowledge of her denial of promotion of June 22, 2001, joined with the fact that on that date she charged defendants with age and gender discrimination, made her alleged injury definite, readily discoverable, and accessible in the sense that nothing impeded her from seeking to redress it at that time. Thus, the continuing violation doctrine is inapposite to the present case. MENENDEZ may argue that her injury was ongoing, but it is uncontested that the last alleged discriminatory act was the failure to promote, which in the present case is time-barred.

## B. *LAW NO. 100 CLAIMS*

The same fate befalls plaintiff's alleged gender and age discrimination claims pursuant to Law No. 100.

Under Law No. 100, a discrimination charge, has to be filed within one (1) year of the occurrence of the alleged discriminatory act or unlawful employment practice. *Olmo v. Young & Rubicam,* 10 P.R. Offic. Trans. 965 (1981). The alleged discriminatory act occurred on June 22, 2001, but plaintiff did not file her complaint with the EEOC until July 12, 2002, one (1) year and twenty (20) days after she had not been promoted by SCOTIABANK. Thus, plaintiff's action under Law No. 100 is also time barred.

Federal and Puerto Rico laws on age and sex discrimination are closely aligned, such that Title VII and ADEA case law are often used to interpret the Puerto Rico statute. *Hernández–Loring v. Universidad Metropolitana*, 233 F.3d 49, 52 (1st Cir.2000). Accordingly, the Court dismisses plaintiff's parallel Puerto Rico Law No. 100 claim for the reasons discussed above.

In view of the foregoing, defendants' Motion For Summary Judgment is **GRANTED** and this action is hereby **DISMISSED**. Judgment to issue.

IT IS SO ORDERED.